799 F.Supp. 1554 (1992)
LOCAL 144, HOTEL, HOSPITAL, NURSING HOME AND AFFILIATED SERVICES UNION, SEIU, AFL-CIO, Plaintiff,
v.
C.N.H. MANAGEMENT ASSOCIATES, INC., Marvin Neiman, individually and as proprietor of Concourse Nursing Home, Defendant.
No. 87 Civ. 2778 (RWS).
United States District Court, S.D. New York.
September 22, 1992.
Vladeck, Waldman, Elias & Engelhard, P.C., New York City (Daniel Engelstein, of counsel), for plaintiff.
Marvin Neiman, P.C., New York City (Theodore T. Mairanz, of counsel), Weinberg, Kaley & Pergament, P.C., Garden City, N.Y., for defendant Marvin Neiman.

OPINION
SWEET, District Judge.
The plaintiff Local 144, Hotel, Hospital, Nursing Home and Allied Services Union, SEIU, AFL-CIO ("Local 144") has by order to show cause moved to hold defendants C.N.H. Management Associates, Inc. ("CNH"), Marvin Neiman ("Neiman"), individual and as sole proprietor of Concourse Nursing Home ("Concourse") in contempt for failure to comply with the settlement Stipulation and Order signed by the parties on May 23, 1991 and so ordered by the Court on May 28, 1991 (the "Order"). Neiman has cross moved for relief from the provisions of the Order. For the reasons set forth below, the motion of Local 144 is granted and Neiman's cross motion is denied. Neiman is held in contempt of the Order and directed to pay $132,972.17 with interest within five (5) days of the filing of this order. Failure to do so will result in the assessment of a penalty of $500 a day for each day of noncompliance.
This action, hotly contested and long outstanding, was settled by the Order entered on the eve of trial. Both Local 144 and Neiman were ably represented by skilled counsel. The Order resolved the claims of Local 144 for past benefits and wages alleged to be owing to the employees at Concourse. This dispute was of long standing and arose out of the controversies between Local 144 and the nursing home operators, which has been described elsewhere in the opinions of September 16, 1987, May 23, 1989, and December 11, 1990 filed herein, familiarity with which is assumed. *1555 See Local 144 v. CNH Management Assocs., Inc., 752 F.Supp. 1195 (S.D.N.Y.1990); Local 144 v. CNH Management Assocs., Inc., 713 F.Supp. 680 (S.D.N.Y. 1989); Local 144 v. CNH Management Assocs., Inc., 669 F.Supp. 632 (S.D.N.Y.1987). A seriously complicating factor was, and remains, the involvement of the appropriate agencies of the State of New York as a result of the process by which the defendants receive Medicaid reimbursement, which constitutes 90% of the revenue of Neiman's nursing home.
Paragraph 7 of the Order provides as follows:
7. If the State monies actually received are less than the Settlement Amount, Neiman shall pay the difference between the Settlement Amount and the State monies actually received in accordance with the following schedule:
(a) to the extent that the State monies are actually received and those monies are less than Seven Million, Three Hundred Thousand ($7,300,000) Dollars, then
(i) the difference between Seven Million, Three Hundred Thousand ($7,300,000) Dollars and the State monies actually received shall be paid in full no later than ten (10) days after receipt of the last payment of the State monies, but in any event no later than ninety (90) days from the date of the execution of this Stipulation,
(ii) an additional Two Hundred Thousand ($200,000) Dollars, shall be paid no later than twelve (12) months after the date of the execution of this Stipulation, and
(iii) the remaining unpaid balance of One Hundred Thirty-Five Thousand ($135,000) Dollars shall be paid no later than eighteen (18) months after the date of the execution of this Stipulation.
(b) To the extent that the State monies actually received are less than Seven Million, Five Hundred Thousand ($7,500,000) Dollars, but more than Seven Million, Three Hundred Thousand ($7,300,000) Dollars, then
(i) the difference between Seven Million, Five Hundred Thousand ($7,500,000) Dollars and the State monies actually received shall be paid no later than twelve (12) months after the date of the execution of this Stipulation,
(ii) the remaining unpaid balance of One Hundred Thirty-Five Thousand ($135,000) Dollars shall be paid no later than eighteen (18) months after the date of the execution of this Stipulation,
(c) To the extent that the State monies actually received are less than Seven Million, Six Hundred ThirtyFive Thousand ($7,635,000) Dollars, but greater than Seven Million, Five Hundred Thousand ($7,500,000) Dollars, then the difference between the Settlement Amount and the State monies actually received shall be paid no later than eighteen (18) months after the date of the execution of this stipulation.
The amount of the installments varied depending upon the size of the payment that the State of New York had committed itself to make if a settlement were reached between plaintiff and Neiman. Pursuant to a letter agreement with Neiman dated October 6, 1989, the New York State Department of Health ("Department of Health") had agreed (a) to process certain of Neiman's Medicaid rate appeals (including those premised on Neiman paying, as part of the settlement, the obligations which the Union was seeking to enforce in this action), (b) to implement a retroactive rate adjustment and (c) to make a lump sum payment reflecting that retroactive adjustment provided that Neiman settled all of his outstanding obligations to plaintiff (a necessary precondition to the rate appeals). Under the terms of the Stipulation, Neiman agreed to apply toward payment of the Settlement Amount all the Medicaid monies (up to $7,635,000) he was to receive as a result of the Department of Health processing those Medicaid rate appeals.
Paragraph 16 of the Order provided that Neiman had the right to relieve himself of the obligation to pay the initial payment of *1556 $7,300,000, as well as the other obligations under the Order, if the aforementioned lump sum payment by the State was less than $7,100,000, after deduction for amounts Neiman otherwise owed the State on account of various audits that had been completed by the time payment was to be maid.
To relieve himself of that obligation, Neiman was required to seek a declaration from the Court that the Settlement was null and void.
On or about August 13, 1991, the New York State Department of Social Services issued a check in the amount of $7,367,027.83 (the "State monies") to "Sterling National Bank & Trust as Trustee for Concourse Nursing Home and Local 144," the Escrow Agent designated under the Stipulation to receive and distribute the Settlement monies.
The condition precedent to Neiman seeking a declaration of relief therefor had not occurred. The lump sum payment by the state not only exceeded the minimum requirement, it was greater than Neiman's total obligation under the first installment due within ninety days of the execution of the Stipulation.
The settlement entitled Neiman to the processing of the Medicaid rate appeals pursuant to the October 6, 1989 letter with the Department of Health, and the processing of those appeals in turn led to a retroactive payment that not only more than covered Neiman's initial obligation under this settlement but also obligations Neiman independently owed the State.
Neiman has, however, refused to pay the second installment on the grounds that the State is auditing the rate appeals which generated the payment of the initial installment and, depending upon the outcome of that audit, may seek to recoup some of that payment and the Union has conspired with the State to take back money which has already been paid.
However, the condition precedent of a minimum payment by the State of $7,100,000 was irrevocably met by the $7,367,027 State payment which Neiman used to satisfy his initial payment obligation under the Stipulation. There is no provision in the Order to permit relief from the order on the grounds of a rate appeal. Rate appeals are based upon unaudited information supplied by the facility and by law can take place as long as six years after the rate is promulgated.
In addition, the State has not yet completed the audit which Neiman asserts could potentially give him the basis for such a declaration and has made no claim for recoupment against Neiman.
The October 6, 1989 letter of the Department of Health referred to above contained a procedural mechanism for Neiman to review the proposed rate adjustments before their implementation. As reflected in the State-created chronology attached as Exhibit "B" to the affidavit of Neiman, and provided a fixed time during which Neiman could contest the department's calculations before payment was made on them. Therefore, it appeared that both parties to this litigation would know the amount of the anticipated reimbursement.
The Department of Health provided Neiman with copies of the proposed rate sheets on May 11, 1990. Although he asked for and received a number of extensions until August 22, 1990, Neiman filed no objection to the rate appeals.
Thereafter, when the parties began serious discussions with Magistrate Judge Roberts, Neiman's time to challenge the State's rate calculations under the October 6, 1989 letter passed. It, therefore, appeared that the only variable (or so the Union and Magistrate Roberts were led to believe) was not the dollar value of the rate appeals themselves, but the amount of the unrelated audits that would be finalized and outstanding when payment was to be forthcoming on those appeals, since those amounts would then be deducted from the sums payable under the rate appeals. That latter amount was uncertain because between the time this case settled and the time when the rate appeals would be paid, additional audits could have been finalized, thus potentially reducing the amount of the net lump sum payment.
*1557 On the evening of April 16, 1991, confirmed in Court on April 17, 1991 when the outline of the settlement was read into the record, the parties also agreed to the identity of the audits which could be offset, i.e., those finalized at the time of settlement.
Thereafter, however, the Order provided a condition that would take into account any offsetting audit adjustments as of the time of the payment, rather than settlement. Neiman met with the State the day before the trial to confirm the reopening of the rate appeals, but this was not disclosed before the settlement was reached or in the seven weeks that it took to resolve the Order.
The State confirmed the existence of the conditions upon which the Union had settled  that the gross amount of the payment would be a little more than $8.7 million through April 30, 1991 and the net payment more than $7.1 million, and advised that the rate appeals had been sent to the Department of Budget.
After the Order was fully signed and in the course of inquiring when the payments were to be made, the Union learned that the rate appeals package had been retrieved from the Department of Budget and had been revised to provide Neiman with more than $3,000,000 in additional monies.
After Local 144 learned of Neiman's action, it chose not to upset the settlement but protested Neiman's conduct and informed him of a potential claim against him and complained to the Department of Health about the failure of the State to inform the Union about the handling of the rate appeals. At a meeting held in Albany on July 1, 1991, the responsible state officer conceded the failure to advise the Union of the change.
After that meeting, Local 144 was informed that the state would reinstate the original appeal package, upon which the settlement was negotiated. Thereafter, Neiman sought to alter the distribution of the settlement monies, an effort which was rejected by order of October 4, 1991 without prejudice.
The State thereafter requested documents on April 17, 1991 in connection with its audit. Counsel for Local 144 learned of the request on May 20, 1992 and Neiman's default in paying the second installment when due has already continued longer than the Union's alleged delay.
The accusation of bad faith is particularly disingenuous given the steps Local 144 has taken to assist Concourse in the audit. For example, although under no obligation to do so, Local 144 consulted with Neiman's attorneys concerning the response, and deferred to their requests as to how to respond. All the requested information has been provided.
Performance by Neiman has not been prevented by Local 144. Neiman knew in July 1991 of Local 144's position with respect to his claim for over $3 million in windfall monies and elected to receive the benefits of that settlement. The facts, as Neiman has alleged them, show only that Local 144 protested Neiman's conduct and the State's failure to disclose what had occurred in a timely fashion to the very parties whom the appeal monies were intended to benefit.
The cases cited by Neiman stand for the proposition that when a party to a contract prevents the other party from performing, he may not seek to excuse his own nonperformance on the basis of the other party's failure to perform which he himself caused. See, e.g., Bass v. Sevits, 78 A.D.2d 926, 433 N.Y.S.2d 245, 247 (3d Dep't 1980); Heyliger v. Tune-Time Fashions, Inc., 39 A.D.2d 698, 332 N.Y.S.2d 253, 255 (1st Dep't 1972).
Here, Local 144 has abided by the May 28, 1991 Order and is now seeking compliance by Neiman. There is neither claim or evidence that Local 144 has failed in any obligation placed upon it by the Order.
To relieve Neiman of the obligation to pay or to delay the payment date prescribed in under the May 28, 1991 Order would be contrary to the explicit and limited procedure set forth in the Order for obtaining relief from its terms. That procedure requires an application to this Court to declare the Stipulation null and void if *1558 the State did not pay a lump sum of at least $7.1 million. The State paid more than that amount.

Conclusion
The motion to enforce the Order is granted, Neiman is held in contempt of this court's order and directed to pay the second installment of $132,972.17, plus interest within five (5) days of the entry of this opinion, and to pay a penalty of not less than $500 for each day thereafter that the installation remains unpaid without prejudice to its making of any further claims by Neiman arising out of, or independent of, the Order.
It is so ordered.